BRENT J. NEWELL (State Bar No. 210312)
LAW OFFICES OF BRENT J. NEWELL
245 Kentucky Street, Suite A-4
Petaluma, CA 94952
Tel: (661) 586-3724
brentjnewell@outlook.com

Attorney for Plaintiff
Association of Irritated Residents

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ASSOCIATION OF IRRITATED RESIDENTS, a nonprofit corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ANDREW WHEELER, in his official capacity as Administrator of the United States Environmental Protection Agency, and JOHN BUSTERUD, in his official capacity as Regional Administrator for Region 9 of the United States Environmental Protection Agency,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

COMPLAINT

1

1

2                                    **INTRODUCTION**

3        1.      Plaintiff Association of Irritated Residents ("AIR") files this Clean Air Act citizen suit to

4    compel Defendants United States Environmental Protection Agency ("EPA"), Andrew Wheeler, and

5    John Busterud to approve, disapprove, or partially approve/disapprove the 2018 Plan for the 1997, 2006,

6    and 2012 PM2.5 Standards and the San Joaquin Valley Supplement to the 2016 State Strategy for the

7    State Implementation Plan (collectively "2018 PM2.5 Plan").

8        2.      Fine particulate matter ("PM2.5") air pollution in the San Joaquin Valley of California

9    constitutes a public health crisis. According to the American Lung Association's State of the Air 2020

10   report, the San Joaquin Valley counties of Fresno, Kings, Kern, Stanislaus, San Joaquin, Merced, and

11   Madera counties are the first, second, third, fourth, sixth, eighth, and eleventh most polluted counties in

12   the United States for short-term exposure to PM2.5, respectively. For long-term exposure, the same

13   report ranks Kern, Kings, Tulare, Stanislaus, San Joaquin, Merced, and Madera as the first, second,

14   third, fourth, sixth, seventh, ninth, tenth, and fourteenth most polluted counties in the United States,

15   respectively.

16       3.      The Clean Air Act is a model of cooperative federalism, whereby the EPA sets health-

17   based National Ambient Air Quality Standards ("NAAQS" or "standards") and the states develop the

18   plans and strategies to achieve those standards. States submit their plans and strategies to EPA for

19   review and approval.  EPA shall approve the submission if it meets the Act's minimum requirements.

20   EPA and citizens may enforce the EPA-approved State Implementation Plan as a matter of federal law

21   to hold states and regulated entities accountable.

22       4.      The San Joaquin Valley Unified Air Pollution Control District ("District") and the

23   California Air Resources Board ("Board") adopted their respective portions of the 2018 PM2.5 Plan, and

24   the Board submitted the Plan to the EPA for review and approval as part of the State Implementation

25   Plan.

26       5.      EPA's review and approval of the 2018 PM2.5 Plan, with public notice and opportunity

27   to comment, ensures that the Plan meets minimum Clean Air Act requirements, including but not limited

28

COMPLAINT

to demonstrating that the emissions reductions in the Plan will attain the 1997, 2006, and 2012 standards by required attainment year, the strategies in the Plan are enforceable by EPA and citizens, the Plan provides reasonable further progress towards attainment, and that the Plan contains enforceable contingency measures in the event the San Joaquin Valley fails to meet reasonable further progress milestones or attain the standards by the relevant attainment date.

6.     The EPA has partially acted on the 2018 PM2.5 Plan. Effective August 21, 2020, EPA took final action to approve the 2018 PM2.5 Plan with respect to the 2006 24-hour PM2.5 standard, except the EPA did not take final action with respect to contingency measures for the 2006 24-hour PM2.5 standard. 85 Fed. Reg. 44192, 44204-44205 (July 22, 2020).

7.      To date, EPA has failed to take final action on the remaining elements of the 2018 PM2.5 Plan with respect to the 1997 and 2012 PM2.5 standards.

## JURISDICTION

8.     This Court has jurisdiction over this action to compel the performance of a nondiscretionary duty pursuant to 42 U.S.C. § 7604(a)(2) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question jurisdiction).

9.     The declaratory and injunctive relief AIR requests is authorized by 28 U.S.C. §§ 2801(a) and 2202, and 42 U.S.C. § 7604.

10.    On November 12, 2020, AIR provided EPA, Wheeler, and Busterud written notice of the claims stated in this action at least 60 days before commencing this action, as required by Clean Air Act section 304(b)(2), 42 U.S.C. § 7604(b)(2) and 40 C.F.R. §§ 54.2 and 54.3.  A copy of the notice letter, sent by certified mail, return receipt requested, is attached as Exhibit 1.  Although more than 60 days have elapsed since AIR provided written notice, EPA has failed to take action and remains in violation of the Clean Air Act.

## VENUE

11.    Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(e)(1), because the Regional Administrator for Region 9 is located in San Francisco County and because EPA's alleged violations relate to the duties of the Regional Administrator in San Francisco.

COMPLAINT

3

**INTRADISTRICT ASSIGNMENT**

12.     Because the failure to perform a nondiscretionary duty alleged in this Complaint relates to the duties of the Regional Administrator, assignment to the San Francisco Division of this Court is proper under Civil L.R. 3-2(c)-(d).

**PARTIES**

13.     Plaintiff ASSOCIATION OF IRRITATED RESIDENTS is a California nonprofit corporation that advocates for air quality and environmental health in the San Joaquin Valley of California.  Members of ASSOCIATION OF IRRITATED RESIDENTS reside in Fresno, Kern, Kings, Stanislaus, and Tulare counties and in the San Joaquin Valley Air Basin.

14.     Plaintiff ASSOCIATION OF IRRITATED RESIDENTS is a person within the meaning of section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e), and may commence a civil action under section 304(a) of the Act, 42 U.S.C. § 7604(a).

15.     Members of AIR live, raise their families, work, and recreate in the San Joaquin Valley. They are adversely affected by exposure to levels of PM2.5 air pollution that exceed the health-based National Ambient Air Quality Standards. The adverse effects of such pollution include actual or threatened harm to their health, their families' health, their professional, educational, and economic interests, and their aesthetic and recreational enjoyment of the environment in the San Joaquin Valley.

16.     The Clean Air Act violation alleged in this Complaint also deprives AIR members of certain procedural rights associated with EPA's required action on the 2018 PM2.5 Plan, including notice and opportunity to comment on EPA's action.

17.     The Clean Air Act violation alleged in this Complaint has injured and continues to injure AIR members.  Granting the relief requested in this lawsuit would redress these injuries by compelling EPA action that Congress required as an integral part of the regulatory scheme for improving air quality in areas violating the National Ambient Air Quality Standards.

18.     Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is the federal agency Congress charged with implementation and enforcement of the Clean Air Act.  As described below, the Act assigns to the UNITED STATES ENVIRONMENTAL PROTECTION

AGENCY certain nondiscretionary duties.

19.     Defendant ANDREW WHEELER is sued in his official capacity as Administrator of the United States Environmental Protection Agency.  He is charged in that role with taking various actions to implement and enforce the Clean Air Act, including the actions sought in this Complaint.

20.     Defendant JOHN BUSTERUD is sued in his official capacity as Regional Administrator for Region 9 of the United States Environmental Protection Agency. He is responsible for implementing and enforcing the Clean Air Act in Region 9, which includes California and the San Joaquin Valley.

## STATUTORY FRAMEWORK

21.     The Clean Air Act establishes a partnership between EPA and the states for the attainment and maintenance of the National Ambient Air Quality Standards ("NAAQS").  *See* 42 U.S.C. §§ 7401-7515.  Under the Act, EPA has set health-based NAAQS for six pollutants, including PM2.5. States must adopt a State Implementation Plan ("SIP") that contains enforceable emissions limitations necessary to attain the NAAQS and meet applicable requirements of the Act.  42 U.S.C. §§ 7401(a)(1), (a)(2)(A); 7502(c)(6).  States must submit all such plans and plan revisions to the EPA.  42 U.S.C. § 7410(a)(1).

22.     Within 60 days of EPA's receipt of a proposed SIP revision, the Clean Air Act requires EPA to determine whether the submission is sufficient to meet the minimum criteria established by EPA for such proposals.  42 U.S.C. § 7410(k)(1)(B).  If EPA fails to make this "completeness" finding, the proposed SIP revision becomes complete by operation of law six months after a state submits the revision.  If EPA determines that the proposed SIP revision does not meet the minimum criteria, the state is considered to have not made the submission.  42 U.S.C. 7410(k)(1)(C).

23.     Within twelve months of an EPA finding that a proposed SIP revision is complete (or deemed complete by operation of law), EPA must act to approve, disapprove, or approve in part and disapprove in part, the submission.  42 U.S.C. § 7410(k)(2).

24.     If EPA disapproves the revision, in whole or in part, then the Clean Air Act requires EPA to impose sanctions against the offending state or region, including increased offsets for new and modified major stationary sources or a prohibition on the use of federal highway funds, unless the state

COMPLAINT

submits revisions within 18 months.  42 U.S.C. §§ 7509(a), (b).  EPA must impose both offsets and highway funding sanctions within 24 months unless the state has corrected the deficiency.  *Id.* Moreover, the Act requires EPA to promulgate a Federal Implementation Plan within 24 months of disapproval unless the state has corrected the deficiency and EPA has approved the revision.  42 U.S.C. § 7410(c).

25.     Once EPA approves a SIP or SIP revision, the state and any regulated person must comply with emissions standards and limitations contained in the SIP, and all such standards and limitations become enforceable as a matter of federal law by the EPA and citizens.  42 U.S.C. § 7413; 7604(a), (f).

26.     If EPA fails to perform a non-discretionary duty, including acting on a proposed SIP or SIP revision by the Clean Air Act deadline, then the Act allows citizens to bring suit to compel EPA to perform its duty.  42 U.S.C. § 7604(a)(2).

### FACTUAL BACKGROUND

27.     PM2.5 is a directly emitted pollutant and forms secondarily in the atmosphere by the precursor pollutants nitrogen oxides ("NOx"), ammonia, sulfur oxides, and volatile organic compounds ("VOC").

28.     Short-term exposure to PM2.5 pollution causes premature death, causes decreased lung function, exacerbates respiratory disease such as asthma, and causes increased hospital admissions. Long-term exposure causes development of asthma in children, causes decreased lung function growth in children, exacerbates respiratory disease such as asthma, increases the risk of death from cardiovascular disease, and increases the risk of death from heart attacks. Individuals particularly sensitive to PM2.5 exposure include older adults, people with heart and lung disease, and children.

29.     On July 18, 1997, the EPA established a 24-hour PM2.5 standard of 65 µg/m$^3$ and an annual PM2.5 standard of 15 µg/m$^3$ after considering evidence from "numerous health studies demonstrating that serious health effects" occur from exposures to PM2.5. *See* 81 Fed. Reg. 6936 (February 9, 2016); *see also* 62 Fed. Reg. 38652 (July 18, 1997); 40 C.F.R. § 50.7.

30.     Effective April 5, 2005, EPA designated the San Joaquin Valley as a nonattainment area

for both the 1997 24-hour and annual PM2.5 standards. 70 Fed. Reg. 944 (January 5, 2005). The Board requested, and the EPA approved, the maximum attainment date extension until April 5, 2015.  *See* 42 U.S.C. § 7502(a)(2)(A); 76 Fed. Reg. 41338, 41340 (July 13, 2011).

31.    On October 17, 2006, EPA strengthened the short-term 24-hour PM2.5 standard by lowering it to 35 µg/m$^3$. 70 Fed. Reg. 61144 (Oct. 17, 2006); 40 C.F.R § 50.13.

32.    Effective March 18, 2013, the EPA strengthened the primary annual PM2.5 standard by lowering the level from 15 to 12 µg/m$^3$ while retaining the secondary annual PM2.5 NAAQS at the level of 15.0 µg/m$^3$. 78 Fed. Reg. 3086 (January 15, 2013); 40 C.F.R. § 50.18.

33.    Effective July 2, 2014, EPA classified the San Joaquin Valley as a moderate nonattainment area for the 2006 24-hour PM2.5 standard. 79 Fed. Reg. 31566 (June 2, 2014).

34.    Effective April 15, 2015, the EPA classified the San Joaquin Valley as a moderate nonattainment area for the 2012 annual PM2.5 standard. 80 Fed. Reg. 2206 (January 15, 2015).

35.    Effective May 7, 2015, the EPA reclassified the San Joaquin Valley as a serious nonattainment area for the 1997 24-hour and annual PM2.5 standards. 80 Fed. Reg. 18528 (April 7, 2015).

36.    Effective February 19, 2016, the EPA reclassified the San Joaquin Valley as a serious nonattainment area for the 2006 24-hour PM2.5 standard. 81 Fed. Reg. 2993 (January 20, 2016).

37.    Effective December 23, 2016, EPA found that the San Joaquin Valley failed to attain both the 1997 24-hour and annual PM2.5 standards by the 2015 attainment date.  81 Fed. Reg. 84481 (November 23, 2016).

38.    Effective August 21, 2020, EPA granted the Board's request to extend the serious area attainment date for the 2006 24-hour PM2.5 standard in the San Joaquin Valley from December 31, 2019 to December 31, 2024. 85 Fed. Reg. 44192 (July 22, 2020). In the same rulemaking, EPA approved those portions of 2018 PM2.5 Plan that pertain to the 2006 PM2.5 standard, except contingency measures. *Id*.

**FIRST CLAIM FOR RELIEF**

**Failure to Perform a Non-Discretionary Duty to Act on the 2018 PM2.5 Plan
(42 U.S.C. § 7410(k)(2))**

39.     AIR re-alleges and incorporates by reference the allegations set forth in paragraphs 1-38.

40.     On October 25, 2018, the Board adopted the San Joaquin Valley Supplement to the 2016 State Strategy for the State Implementation Plan.

41.     On November 15, 2018, the District adopted the 2018 Plan for the 1997, 2006, and 2012 PM2.5 Standards.

42.     On January 24, 2019, the Board approved the 2018 Plan for the 1997, 2006, and 2012 PM2.5 Standards as a revision to the California State Implementation Plan.

43.     On May 10, 2019, the Board submitted the 2018 PM2.5 plan to the EPA.

44.     The 2018 PM2.5 Plan became complete by operation of law on November 10, 2019.

45.     EPA has a mandatory duty to act on the 2018 PM2.5 Plan no later than November 10, 2020.  42 U.S.C. § 7410(k)(2).

46.     EPA has taken partial action on the 2018 PM2.5 Plan. Effective August 21, 2020, EPA took final action to approve the 2018 PM2.5 Plan with respect to the 2006 24-hour PM2.5 standard, except the EPA did not take final action with respect to the contingency measures element for that standard. 85 Fed. Reg. 44192, 44204-44205 (July 22, 2020).

47.     By failing to act on the entire 2018 PM2.5 Plan to date, EPA has violated and continues to violate its nondiscretionary duty to act on the 2018 PM2.5 Plan pursuant to Clean Air Act section 110(k)(2), 42 U.S.C. § 7410(k)(2).

48.     This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Act's citizen suit provision.  42 U.S.C. § 7604(a)(2).  EPA's violation of the Act is ongoing and will continue unless remedied by this Court.

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

A.  DECLARE that the Defendants violated the Clean Air Act by failing to act on the 2018 PM2.5 Plan;

B.  ISSUE preliminary and permanent injunctions directing the Defendants to finalize action on the 2018 PM2.5 Plan;

C.  RETAIN jurisdiction over this matter until such time as the Defendants have complied with its nondiscretionary duty under the Clean Air Act;

D.  AWARD to Plaintiff its costs of litigation, including reasonable attorney and expert witness fees; and

E.  GRANT such additional relief as the Court may deem just and proper.

Dated: January 17, 2021                    Respectfully Submitted,

                                           LAW OFFICES OF BRENT J. NEWELL

                                           By: /s/ Brent J. Newell

                                                Brent J. Newell
                                                Attorney for Plaintiff
                                                ASSOCIATION OF IRRITATED
                                                RESIDENTS

COMPLAINT

9